IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. |
| | 1:19-CR-0078-SCJ-LTW |
| v. | |
| LOHRASB "JEFF" JAFARI, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on Defendant Lohrasb "Jeff" Jafari's ("Defendant") Motion for Bill of Particulars (Doc. 40), Motion to Disclose Specific Brady Information (Doc. 41), Preliminary Motion to Suppress (Doc. 43), and Particularized Motion to Suppress (Doc. 46). The Government has filed a Response in Opposition to Defendant's motions. (Docs. 47, 48, and 51). Thereafter, Defendant filed a Reply to the Government's response to his motion to suppress. (Doc. 52). For the reasons outlined below, Defendant's Motion for a Bill of Particulars and his Motion for Early Disclosure of Specific Brady Information are **DENIED**. (Docs. 40, 41). This Court also **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**. (Docs. 43, 46).

## BACKGROUND

On February 26, 2019, a grand jury in the Northern District of Georgia returned a fifty-one count Indictment ("Indictment") charging Defendant with one count of conspiracy to commit bribery in violation of 18 U.S.C. § 371 (Count One); six counts of bribery[1] in violation of 18 U.S.C. § 666(a)(2) (Counts Two through Seven); one count of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3) (Count Eight); three counts of tax evasion in violation of 26 U.S.C. § 7201 (Counts Nine through Eleven); twenty-four counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(ii) (Counts Twelve through Thirty-six); and fourteen counts of structuring in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(d) (Counts Thirty-seven through Fifty-one). The Indictment also includes a forfeiture provision, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c). Notably, the Indictment is very detailed, it has forty-five paragraphs, and it is twenty-one pages. (Doc. 1).

---

[1] According to the Government, the bribery counts relate to Defendant allegedly paying bribes to two individuals: Adam Smith, the Chief Procurement Officer for the City of Atlanta (Counts One through Five) and a separate official and agent of the DeKalb County government. (Counts Six and Seven). (Doc. 48).

## **DEFENDANT'S MOTION FOR BILL OF PARTICULARS**

### A. **Defendant's Requests**

Defendant has filed a Motion for Bill of Particulars, requesting that the Court direct the Government to provide additional information regarding the Conspiracy to Commit Bribery and the Bribery Counts--Counts One through Seven--of the Indictment.  (Doc. 48).  Specifically, Defendant requests the following:

1. The total amount of money the government contends Defendant corruptly paid to influence or reward Adam Smith;

2. The total amount of money Adam Smith corruptly received in his position as an agent of the City of Atlanta, i.e., Atlanta's Chief Procurement Officer;

3. The name(s) of any other individual(s) who the Government contends corruptly paid Adam Smith in his position as an agent of the City of Atlanta, i.e., Atlanta's Chief Procurement Officer;

4. Identify specifically what Adam Smith agreed to do (to use his influence in return for the money the government contends the defendant corruptly paid him;

5. Identify specifically what Adam Smith actually did (used his influence or was rewarded for) in return for the corrupt payments the government contends the defendant made to him;

6. The name(s) of any other individual(s) who the government contends corruptly paid the "official and agent of Dekalb County" (believed to be Morris Williams);

7.     Identify specifically what the "official and agent of Dekalb County" (believed to be Morris Williams) agreed to do (to use his influence) in return for the money the government contends the defendant corruptly paid him in counts 6 and 7;

8.     Identify specifically what the "official and agent of Dekalb County" (believed to be Morris Williams) actually did (used his influence or was rewarded for) in return for the corrupt payments the government contends the defendant   made to him in counts 6 and 7;

9.      Identify specifically the "transaction and series of transactions" referenced in count 2, ¶12; count 3, ¶14; count 4, ¶16; and count 5, ¶18;

10.    Identify specifically the "transaction and series of transactions" referenced in count 6, ¶20 and count 7, ¶22; and

11.    Identify specifically what transaction or series of transactions are the source of "the proceeds" of "bribery" referenced in counts 12-15, ¶32; count 16, ¶34; and counts 17-36, ¶36.

(Doc. 40, at 1-2).

Despite the Defendant's explicit requests, he did not include any argument in support of his motion.  Instead, during a pretrial conference on July 24, 2019, Defendant provided a number of arguments in support of his Motion.   First, Defendant focused his argument on the word "corruptly" in 18 U.S.C § 666(a)(2)[2]

---

[2] 18 U.S.C. § 666(a)(2) allows for the imprisonment of whomever: corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or

which is key for a violation of that statute.  (Tr. 8).  Defendant explained that "it is not illegal to get a gift, goodwill, friendship, a thing of value unless it is essentially for a dishonest purpose, which is to influence or reward the actions of what I will call here the alleged bribee, Adam Smith."  (Transcript of June 24, 2019 Hearing ("Tr. "), 8, Doc. 45).  According to Defendant, this case is based on the idea that he gave cash to Smith for the purposes of influencing or rewarding Smith for Smith's acts.  (Id.).  Defendant contends that after going through "tens of thousands of pages of discovery, probably in excess of 100,00 pages" and on review of the Indictment, he is unable to tell what "Smith actually was able to do to influence or be influenced or to be rewarded" (Requests 4-5).  (Tr. 8-9).

Based on his understanding of Smith's role as the Director of Procurement for the City of Atlanta, Defendant asserts that Smith was only able to issue purchase

---

series of transactions of such organization, government, or agency involving anything of value of $5,000 or more.  18 U.S.C. § 666(a)(2).  In other words, Defendant violated § 666(a)(2) if he (1) gave a City of Atlanta employee anything of value (2) with the corrupt intent to influence or reward them (3) in connection with any business, transaction, or series of transactions of the City of Atlanta involving anything of value of $5,000 or more.  See United States v. McNair, 605 F.3d 1152, 1186 (11th Cir. 2010).

orders after a notice to proceed from another independent City of Atlanta body had been authorized and issued; and Smith did not have the ability to refuse to do so. (Tr. 9). The purchase order, Defendant explained, "simply is the means by which one bills, like the invoice, it's like when you send a bill in, you simply say, hey, this is the purchase order in which I'm billing against." (Tr. 11). It is Defendant's position that "that's not going to be the approval. But, if that is what the Government is relying on, [Defendant] should know that, or if they are relying on something else, the Government should be able to tell [him]. (Tr. 12).

In anticipation of the Government's argument in response, Defendant argued the Government may say "well, there were multitude of contracts for which there were purchase orders, but that does not answer the question about what it is that [Smith] had in the approval process." (Tr. 10). In sum, Defendant seeks the contract number(s) that Smith approved, or if the Government's position is that the purchase order constitutes approval, Defendant wants the purchase order number(s). (Tr. 11).

Additionally, Defendant seeks information regarding how much money the Government alleges he paid Smith; the total amount Smith received by virtue of his position with the City of Atlanta; the identity of others who allegedly paid Smith in his position with the City of Atlanta; and whether Smith received money from others

that is characterized as something other than corrupt (Requests 1-3).   (Tr. 12).
Defendant asserts that this information is part of his defense that he was receiving
gifts, monies, goodwill, friendships because Smith did not have the ability to approve
[contracts], and that others were doing the same thing, which would suggest that his
conduct was not illegal conduct.   (Id.).   If there is no corrupt intent, Defendant
explained that goes to show that gifts for goodwill or friendship were taking place.
(Tr. 13).

Further, Defendant requests the amount of money the Government alleges he
and others paid to the DeKalb County official, believed to be Morris Williams, and
what the DeKalb County official would have been influenced to do or rewarded for
doing in 2014 (Requests 6-8).   (Tr. 17).   Defendant asserts that there is nothing in the
discovery that is suggestive of what Williams could to do to influence, agree to
influence, or did to influence or agree to undertake for Defendant's alleged bribe.
(Tr. 17).

Lastly, Defendant seeks the identity of a specific transaction or series of
transactions in the Indictment (Requests 9-11).   By way of example, Defendant
pointed to Counts Two through Five of the Indictment referencing "corruptly" and
"transaction or series of transactions."   Count 2 provides the following:

**Count 2**
Bribery
(18 U.S.C. § 666)

> 12.  From on or about January 1, 2014 to on or about December 31, 2014, in the Northern District of Georgia, the defendant, LOHRASB "JEFF" JAFARI, **corruptly** gave, offered, and agreed to give a thing of value to Adam Smith, an agent of the City of Atlanta, Georgia, a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance, with the intent to influence and reward Smith in connection with **a transaction and series of transactions** of the City of Atlanta involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

(Doc. 1, at 5) (emphasis added).  Defendant contends that the discovery provided does not indicate what the transaction is or the series of transactions are.  (Tr. 10).  In order to prepare his defense, Defendant argues the Government should be required to tell him "what it is that Adam Smith had the authority to approve in real terms." (Tr. 10).

**B.      The Government's Response**

The Government argues in response that Defendant's Motion should be denied because it seeks an explanation of the Government's evidence, not the charged offenses, and because the information sought has already been provided to Defendant by means of the Indictment and in the extensive discovery materials.

8

(Doc. 40, at 9).  According to the Government, although the Defendant creatively attempts to justify his requests in light of the governing law, the reality is that he is asking the Government to explain its theory of the case and identify specific documents for him in support of its theory.

### C.    Analysis

Federal Rule of Criminal Procedure (7)(c)(1) provides that an indictment shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.  Federal Rule of Criminal Procedure (7)(f) authorizes the Court to direct the government to file a bill of particulars.  The grant or denial of a bill of particulars rests within the sound discretion of the trial court.  United States v. Draine, 811 F.2d 1419, 1421 (11th Cir. 1987); United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985).  The defendant bears the burden of showing that the information requested is necessary and that he will be prejudiced without it so as to justify granting a bill of particulars.  United States v. Barnes, 158 F.3d 662, 666 (2d Cir. 1998).  A mere statement that the defendant will be prejudiced without the bill is insufficient.  See id.

The purpose of a true bill of particulars is threefold: "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his

defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985) (citations omitted). "A bill of particulars, properly viewed, supplements an indictment by providing the defendant with information *necessary* for trial preparation." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (italics in original). Generalized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill. Id. at 1442; United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). Similarly, a bill of particulars is not a tool that allows defendants to obtain every fact that the Government may possess regarding a conspiracy. See United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986), modified on other grounds, 801 F.2d 378 (11th Cir. 1986).

Furthermore, a defendant is not entitled to a bill of particulars "with respect to information which is already available through other sources." United States v. Martell, 906 F.2d 555, 558 (11th Cir. 1990); Rosenthal, 793 F.2d at 1227. A bill of particulars may be obtained to clarify an indictment, as long as it does not seek to determine in advance the government's proof. United States v. Johnson, 575 F.2d 1347, 1356 (5th Cir. 1978); United States v. Smith, 341 F. Supp. 687, 690 (N.D. Ga.

10

1972).  However, the fact that an indictment conforms to the simple form suggested by the Federal Rules of Criminal Procedure, or accurately tracks the statutory or regulatory language, is no answer or defense to a motion for a bill of particulars, since Rule 7(f) presupposes a valid indictment or charge against the defendant.  See United States v. Carrier, 672 F.2d 300, 303 (2d Cir. 1982) ("A bill of particulars may not save an invalid indictment[.]").  Instead, it is proper for a defendant to be furnished with further information regarding the charge when it is necessary for preparation of his defense and even though the granting of the motion requires the supplying of information "which in other circumstances would not be required because evidentiary in nature."  United States v. Smith, 16 F.R.D. 372, 375 (W.D. Mo. 1954); Carrier, supra ("[A bill of particulars] may provide the defendant with the evidentiary details needed to establish his defense.").  Even if in providing those details in a bill of particulars, the government's evidence or theories are somehow disclosed, the bill of particulars might still be proper.  United States v. Thevis, 474 F. Supp. 117, 123 (N.D. Ga. 1979); Smith, 16 F.R.D. at 375; Wright, Federal Practice and Procedure Criminal 2d § 129.  Finally, opposition to a bill of particulars is not properly made out by a claim that the defendant "'knows what he did, and, therefore,

has all the information necessary.'"  <u>United States v. Moore</u>, 57 F.R.D. 640, 643 (N.D. Ga. 1972) (quoting <u>Smith</u>, <u>id.</u>).

Here, the Court finds that Defendant is not entitled to a bill of particulars for a number of reasons.  First, the charging instrument in this case is legally sufficient to support the charges provided therein as it, <u>inter</u> <u>alia</u>, is very exhaustive, it sets forth the statutes involved in the charges against Defendant and it tracks the relevant language of those statutes.  <u>See</u>  <u>United States v. Adkinson</u>, 135 F.3d 1363, 1375 n.37 (11th Cir. 1998) ("An indictment need do little more than track the language of the statute charged to be sufficient."); <u>United States v. Critzer</u>, 951 F.2d 306, 307-08 (11th Cir. 1992) ("The indictment is sufficient if it charges in the language of the statute."); <u>United States v. Malone</u>, No. 804CR348T24TGW, 2005 WL 1243762, at *3 (M.D. Fla. May 25, 2005) (denying a motion to dismiss an indictment because it tracked the language of the statute setting forth the essential elements of the crime).  The Indictment also provides relevant background information, including but not limited to: the manner and means, the actions taken by conspirators, and nine overt acts committed in furtherance of the conspiracy (the dates, places, and the form of the payments); it details the dates Defendant allegedly bribed Smith and an official and agent of DeKalb County; it provides facts from recorded statements detailing how

Defendant allegedly attempted to intimidate, threaten, and corruptly persuade Smith to provide false information to law enforcement regarding the commission of a federal offense; it provides the calendar years, facts and affirmative acts surrounding Defendant's receipt of taxable income, upon which there was federal income tax due and owed to the U.S., that Defendant failed to make an income tax return on and allegedly willfully attempted to evade and defeat the assessment of income tax due, and the amount of the assessed income tax due; it provides the financial transactions that affected interstate and foreign commerce and involved the proceeds of specified unlawful activity; it lists the dates and amount of the financial transactions as well as the account numbers that form the bases of the money laundering counts; it provides the manner in which Defendant allegedly evaded the reporting requirements of 31 U.S.C. § 5313(a), then caused and attempted to cause PNC Bank to fail to file a report required under Section 5313(a), and other regulations; and it provides how Defendant allegedly did so, as part of a pattern of illegal activity involving more than $100,000 in a 12-month period, and it details the dates, withdrawal amounts, PNC account numbers, and the check numbers and cashed check amounts that form the bases of the structuring charges.  (Doc. 1).

Notably, the answers to Defendant's questions as to what Smith was expected

to do (use his influence) and what Smith did in exchange for the alleged cash payments from Defendant can be found in paragraphs 7 and 8 the Indictment.  The Indictment alleges in paragraphs 7 and 8 that Defendant expected Smith to use his position and power to assist him with contracting and procurement with the City and furnish him with benefits and favors when needed; and in exchange, Smith met with Jafari on a regular basis and provided him with information/counsel regarding the procurement processes and other information, and when Defendant's company or a joint venture in which Defendant's company was listed a joint venture received additional work on an existing contract, Smith approved the task or purchase order. (Doc. 1, at 2-3).   After the pretrial conference, the Government contends—and Defendant does not contest—that it produced to the Defendant the audio recording of the FBI's initial interview with Smith and the FBI report from Smith's first proffer session with the United States Attorney's Office in which Smith discusses the payments that the Defendant made to him and what he did, or was expected to do, in return for those payments.  (Doc. 48, at 4).

Second, not only has the Government filed a detailed Indictment in this case, the Defendant admits that the Government has produced voluminous discovery. The Government asserts that it has provided Defendant with thousands of pages of

bank statements that reflect each and every payment made to the Defendant and his various companies from the City of Atlanta, along with every document produced by the City of Atlanta in response to the Government's subpoena for records regarding the work of the Defendant and his firm, all correspondence provided by the City of Atlanta to the Government, and all bank records and other financial information in the Government's possession relating to the Defendant, PRAD Group, and any related entities. (Doc. 48, at 4-5).

With regard to Defendant's interactions with the DeKalb official, requests 6, 7, and 8, the Government provided Defendant with two audio and video-recorded meetings in which the Defendant allegedly gives the DeKalb official cash and discusses DeKalb County business that Defendant hopes the official will influence in his favor, and an FBI report that summarizes an interview with the DeKalb County official about the bribes he received from Defendant. (Doc. 48, at 4).

The foregoing amount of detail in the Indictment together with the voluminous discovery produced by the Government (i.e. bank records, financial statements, witness transcripts/recordings, business and tax related records), provide sufficient information about the nature of the charges to enable Defendant to prepare for trial, to avoid unfair surprise, and to enable him to plead double

jeopardy in the event of a later prosecution for the same offense.  See Cole, 755 F.2d 748, 760-61 (11th Cir. 1985) (holding that the district court did not abuse its discretion in refusing to grant a bill of particulars when (1) the indictment adequately informed the defendants of the charges pending against them by tracking the language of the statutes, and (2) the evidence presented consisted of testimony of conversations and activities in which the defendants themselves participated); United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011).

Defendant seeks to have the Government itemize in advance of trial how much he allegedly paid in bribes to Smith and the DeKalb County official.  But requiring the Government to specify individual payments or provide an accounting of total amounts he allegedly paid in bribes to city and/or county officials is not necessary for Defendant to prepare his defense, especially since he allegedly was involved in effectuating the payments.  Furthermore, the Defendant already has in his possession recordings of Smith and the DeKalb official discussing payments Defendant made to each of them.   Because these are "activities in which [Defendant allegedly] participated," the Defendant should already have access to this information.  See e.g. United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985); United States v. Green, No. 1:16-CR-145-TWT-JKL, 2017 WL 10403354, *2 (N.D. Ga. Oct. 5, 2017) (denying motion

for bill of particulars seeking information as to whether defendant was enriched through criminal conduct, and, if so, how much money did he receive, and whether defendant provided financial assistance to gang members.); United States v. Victor Teicher & Co., L.P., 726 F. Supp. 1424, 1446 (S.D. N.Y. 1989) (denying motion for bill of particulars seeking, inter alia, information an accounting of the amount by which the defendant was enriched by the alleged conspiracy).

Likewise, to the extent Defendant seeks information as to the total amount of money Smith allegedly "corruptly received" from others and their name(s) (requests 2 and 3), these requests seek evidentiary detail not properly the subject of a bill of particulars. Instead, the Court finds that Defendant's requests seek details on the Government's theory of the case to which he is not entitled in a bill of particulars. See United States v. Roberts, 174 F. App'x 475, 477 (11th Cir. 2006) (a bill of particulars "'is not designed to compel the government to detailed exposition of its evidence'") (citation omitted); United States v. Chaidez-Ontiveros, No. 1:11-cr-264-AT-JFK, 2011 WL 7574634, at *2-3 (N.D. Ga. Oct. 25, 2011) (denying motion for a bill of particulars where the defendant sought the government's theory of the case and evidentiary detail, where the government "provided . . . a wealth of information in discovery" and the indictment fully apprised the defendant of the charges). Requests to know

the "whens," "wheres," and "with whoms" of acts in conspiracy are routinely denied.  See United States v. Henry, 861 F. Supp. 1190, 1197 (S.D. N.Y. 1994).

As discussed above, the Court finds that the Government has informed Defendant of the charges against him with sufficient precision to prepare his defense, minimize surprise at trial, and plead double jeopardy in the event of a later prosecution for the same offense, and has provided voluminous discovery containing information about the nature of the charges against Defendant, his company, and joint ventures he associated with, financial records evidencing transactions undertaken by Defendant and his companies, and audio/visual recordings of Defendant with city and county officials referenced in the Indictment. Based on the foregoing reasons, and because Defendant's requests essentially seek details on the Government's theory of the case, Defendant's Motion for Bill of Particulars is **DENIED**.  (Doc. 40).

## MOTION TO DISCLOSE SPECIFIC *BRADY* INFORMATION

### A.   Defendant's Requests

Defendant also moves the Court to order the Government to immediately disclose the following specific Brady information:

1. The total amount of money Adam Smith admits and/or the government's investigation shows he corruptly received in his role as City of Atlanta's Chief Procurement Officer;

2. The name(s) of individual(s) other than the defendant who Adam Smith admits and/or the government's investigation shows corruptly paid him in his role as City of Atlanta's Chief Procurement Officer and the dates/time period of such payments;

3. The total amount of money the "official and agent of Dekalb County" (believed to be Morris Williams) admits and/or the government's investigation shows he corruptly received while such an official and agent;

4. The name(s) of individual(s) other than the defendant who the "official and agent of Dekalb County" (believed to be Morris Williams) admits and/or the government's investigation shows corruptly paid him while such an official and agent and the dates/time period of such payments.

(Doc. 41).  Although Defendant did not include any argument or legal authority in his motion, again during the July 24, 2019 pretrial conference, Defendant argued the information requested is <u>Brady</u>[3] material and not impeaching material.  (Tr. 12). Defendant explained that the information as to whether Smith was receiving money from others, who are not being prosecuted, who, therefore, had no corrupt intent, shows that gifts for goodwill or friendship were taking place.  (Tr. 13).  This information, Defendant argued is information exculpatory to build his defense

---

[3] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

around.  (Tr. 13).

During the pretrial conference, Defendant also requested forensic data on Smith's cell phone under Rule 16, all of Smith's prior statements, any recordings made by Smith of other individuals.  (Tr. 15).  Defendant made the same request for information from the DeKalb official.  (Tr. 17).

### B.  The Government's Response

The Government argues in response that information relating to alleged bribes by others is not exculpatory as to Defendant's conduct, and Rule 16 does not require the Government to produce a copy of all of Smith's cell phone data.  The Government asserts that it has already produced communications between Defendant and Smith that were found on Smith's cell phone; two audio and video-recorded meetings in which the Defendant paid cash to the DeKalb official and discussed DeKalb County business that Defendant hoped the official would influence in his favor, and an FBI report that summarizes an interview with the DeKalb official about the bribes he received from the Defendant.  (Doc. 5-6).  After the pretrial conference, the Government maintains that it produced to Defendant the audio recording of the FBI's initial interview with Smith and the FBI report from Smith's first proffer session with the United States Attorney's Office in which he discusses the payments that the

Defendant made to him and what he did, or was expected to do, in return for those payments.  (Doc. 47, at 6).

**C.     Analysis**

Pre-trial criminal discovery is governed by Rule 16, Fed.R.Crim.P.  Among other things, Rule 16 specifically requires the government to disclose to the defendant, and make available for inspection, copying, or photographing, certain written or recorded statements made by the Defendant, as well as summaries of any oral statements made by the Defendant in response to governmental interrogation. See Fed.R.Crim.P. 16(a)(1)(A)-(B).  Rule 16(a)(1)(E) addresses the discovery of documents and tangible objects, requiring the government to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, if the requested items (1) are material to the preparation of the defendant's defense; (2) are intended for use by the government as evidence in chief at the trial; or (3) were obtained from or belong to the defendant. Fed.R.Crim.P. 16(a)(1)(E).

Under Brady, the Government is required to disclose to the defense any material exculpatory evidence in the Government's possession.  The Supreme Court

extended the Brady rule in Giglio v. United States, 405 U.S. 150 (1972), which requires the Government to disclose impeachment materials, such as evidence that a witness has been offered leniency from prosecution in exchange for his testimony against a defendant.   Under Giglio, "[w]hen the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility" justifies a new trial.   Id. at 153-54. Conversely, Brady (exculpatory) information relates to "evidence which directly tends to lessen a defendant's guilt, e.g., a statement from another person which tends to relieve the defendant of responsibility for the crime."   United States v. Hopkins, No. S-05-0538 EJG, 2008 WL 4453583, at *2 (E.D. Cal. Oct. 3, 2008) (unpublished). Giglio (impeaching) information relates to "*witness credibility* type evidence of a *collateral* nature, e.g., evidence that the government's witness who is implicating the defendant is not to be trusted in his implications because of bias, previous misrepresentations in similar matters, and so forth, i.e., indirectly making it less likely that the defendant is guilty."   Id. (emphasis in original).

   This Court has analyzed Defendant's discovery requests under Brady because, with respect to the discovery requests at issue in Defendant's Motion, Rule 16 of the Federal Rules of Criminal Procedure does not give any broader access than Brady.

The Eleventh Circuit has concluded that Rule 16(a)(1)(A) does not reach statements made by co-conspirators or other prospective witnesses.  United States v. Jordan, 316 F.3d 1215, 1227, 1251 n.17 (11th Cir. 2003); United States v. Orr, 825 F.2d 1537, 1541 (11th Cir. 1987); United States v. Mitrovic, 286 F.R.D. 683, 686 (N.D. Ga. 2012); Fed. R. Crim. P. 16(a)(2) (discovery of or inspection of statements made by prospective government witnesses not required except as permitted under the Jencks Act and discovery of agent's reports, memoranda, or other internal documents). Furthermore, Defendant's request fares no better under Rule 16(a)(1)(E) which requires that Defendant be permitted to inspect material "papers," "documents," and "data," if the Government intends to use the items in its case in chief, or if the item was obtained from or belongs to the defendant.  Rule 16(a)(2) further provides, however, that Rule 16(a)(1)(E) does not authorize the discovery or inspection of statements made by government witnesses except those provided for by the Jencks Act, 18 U.S.C. § 3500.  Under the Jencks Act, no statement of a government witness is the subject of discovery until the witness has testified on direct examination during the trial.  Jordan, 316 F.3d at 1227 n.17.

Defendant's requests for information relating to the names of other individuals who "corruptly paid" Adam Smith and/or the DeKalb County official and for

information regarding the "total amount of money" those officials "corruptly received" are not <u>Brady</u> material.  Such evidence is not "evidence that is favorable to the accused" because it does not tend to relieve the Defendant of responsibility for his alleged crimes.  <u>Jordan</u>, 316 F.3d at 1251.  The amount of money the officials in question "corruptly received" from individuals other than Defendant (and the names of those individuals) does not demonstrate Defendant's conduct was legal.  <u>See United States v. Vujovic</u>, 635 F. App'x 265, 269 (6th Cir. 2015) (holding evidence "others were also bribing" an individual is not <u>Brady</u> material because it "is only useful to show that others were guilty of separate criminal acts [and] such evidence would not show that [the defendant] was innocent").  Information regarding any alleged bribes that the officials took from others is properly considered impeaching information that will be produced consistent with governing law and the Court's standing order, which provides that such materials "must be provided no later than production of the Jencks Act statements." (Doc. 18, at 6).  As such, Defendant's Motion for Early Disclosure of Specific Brady Information is **DENIED**.  (Doc. 41).

As mentioned above, Defendant also requested a copy of all data from Smith's cell phone.  (Doc. 45, at 15).  The Government has already turned over communications between the Defendant and Smith that were on Smith's cell phone.

(Id. at 14).  As for the any other information, Defendant did not argue that the data from Smith's cell phone is Brady material, but instead argued that the production is required under Rule 16.  But simply making "a conclusory argument that the requested item is material to the defense" and providing nothing more than a "general description of the item will not suffice."  Jordan, 316 F.3d at 1250.  Defendant is not entitled to just receive "the full forensic data on [Smith's] cell phone" like he requested.  (Doc. 45, at 15).  Instead, Defendant must point to specific information and demonstrate how that evidence would be relevant to his defense.

In response to Defendant's request, the Government offered to "permit the Defendant to inspect all the data from Smith's cellular telephone in the FBI's offices," which will provide him with the opportunity to identify any data not already provided that he believes should be.  (Doc. 47, at 7).  Since the Government filed this response, it appears Defendant has taken the opportunity to inspect the data from Smith's cell phone.  The Court contacted Defense counsel to see if he intended to reply to the Government's response or if the matter was ready for submission, and on December 4, 2019, Defense counsel responded stating he believed "the matter [was] ready to be submitted to the [C]ourt." Defense counsel stated that the

Government would copy and produce all requested information from Smith's cell phone "except possibly some very limited . . . call log records."

Thus, it appears this issue has been resolved and that the parties intend to "work [their] way through" any remaining issues with respect to the data from Smith's cell phone. To the extent the parties cannot agree on the production of *specific* material from Smith's cell phone, Defendant can raise a proper motion to compel. Any such motion must be filed under seal until the Court determines whether the items should be produced in discovery and to what extent that information is protected by the terms of the protective order previously entered by the Court. Otherwise, Defendant's oral request for the "full forensic data on [Smith's] cell phone" is **DENIED as moot**. (Doc. 45, at 15).

## PARTICULARIZED MOTION TO SUPPRESS

### A.    Defendant's Request

Defendant moves to suppress an audio recording of his conversation with Smith that occurred on February 1, 2017. (Doc. 46, at 1). Defendant contends that an FBI Special Agent asked Smith to record the conversation with Defendant even though the Government knew Defendant was represented by counsel at the time. (Id. at 1-2). Defendant also contends such conduct violated his Fifth Amendment

due process rights and Georgia's Rule of Professional Conduct 4.2, which prohibits contacting a person known to be represented by counsel except under certain circumstances.  (Id. at 2).

### B.      The Government's Response

The Government argues in response that Defendant cannot establish the Government "knew he was represented in connection with the bribery scheme involving Smith." (Doc. 51, at 2).  Rather, Defendant's counsel attorney sent an email to the Government years before the recorded conversation stating Defendant was represented, without describing the scope of the representation, and asking that "the agents" have no "direct or indirect" contact with Defendant.   (Id. at 2-3). Importantly, the investigation into the bribery of Smith had not even begun at the time the email was sent, so the Government had no reason to believe Defense counsel's representation had anything to do with Smith.  (Id. at 3).  As such, the Government could not have violated Georgia's Rule of Professional Conduct 4.2. (Id. at 6-10).

Rule 4.2 was also not violated, the Government argues, because the Rule exempts criminal investigative communications by cooperating persons prior to the initiation of criminal proceedings.  (Id. at 10-18).  Even if a violation were established,

binding Eleventh Circuit precedent holds that suppression is not a permissible remedy for a violation of a state's ethics rules.  (Id. at 19-21).  Last, the Government contends that the use of "a well-established law enforcement tactic like covert recordings of a defendant's conversations with an informant prior to an indictment" does not constitute a violation of Defendant's Fifth Amendment rights.  (Id. at 21-24).

C.   **Analysis**

Defendant admits that his counsel's communications with the Government related to the alleged bribery of the DeKalb official—not Smith—but argues the Government should have assumed his attorney also represented him in connection with the alleged bribery of Smith because that "occurred during the same time period."  (Doc. 52, at 2-3); (id. at 3 n.*).  But Defendant nowhere addresses the Government's argument that he cannot claim the protection of Rule 4.2 by providing "a blanket notice that Defense counsel represented the Defendant in all matters," even with respect to investigations that had not yet begun.  (Doc. 51, at 8-10).

Nonetheless, the Government is correct that Georgia's Rule of Professional Conduct 4.2 does not apply to "constitutionally permissible investigative activities of lawyers representing governmental entities, directly or through investigative agents, prior to the commencement of criminal or civil enforcement proceedings,

when there is applicable judicial precedent that either has found the activity permissible under [Rule 4.2]. Ga. R. Prof. Conduct 4.2, cmt. [2]. Every circuit that has analyzed the applicability of rules like 4.2 has concluded the rule does not prevent any and all communications by informants/cooperating persons with the defendant prior to the initiation of criminal proceedings. See United States v. Binday, 804 F.3d 558, 592-95 (2d Cir. 2015); United States v. Carona, 660 F.3d 360, 364-66 (9th Cir. 2011); United States v. Mullins, 613 F.3d 1273, 1288-90 (10th Cir. 2010); United States v. Brown, 595 F.3d 498, 514–16 (3d Cir. 2010); United States v. Cope, 312 F.3d 757, 773-74 (6th Cir. 2002); United States v. Johnson, 68 F.3d 899, 902 (5th Cir. 1995); United States v. Worthington, 911 F.2d 726 (4th Cir. 1990); United States v. Sutton, 801 F.2d 1346, 1366 (D.C. Cir. 1986); United States v. Fitterer, 710 F.2d 1328, 1333 (8th Cir. 1983). Defendant simply ignores this veritable avalanche of authority. See (Doc. 52). Even if a violation of Georgia's Rule of Professional Conduct 4.2 occurred, that would not end the inquiry.

A comment to Rule 4.2 recognizes "the Rule imposes ethical restrictions that go beyond those imposed by constitutional provisions." Ga. R. Prof. Conduct 4.2, cmt. [2]. Thus, a violation of the Rule is not necessarily a constitutional violation and, as Defendant concedes, binding Eleventh Circuit precedent holds "a state rule of

professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." United States v. Lowery, 166 F.3d 1119, 1124 (11th Cir. 1999). Defendant argues Lowery was incorrectly decided, but this Court is "bound to follow a prior binding precedent unless and until it is overruled by [the Eleventh Circuit] en banc or by the Supreme Court." In re Burgest, 829 F.3d 1285, 1287 (11th Cir. 2016) (quoting United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008)). Thus, Defendant must show some basis for suppressing the recording other than an alleged violation of Rule 4.2.

Defendant argues the Government's conduct also violated "his 5th Amendment right to due process." (Doc. 46, at 2). "To constitute a constitutional violation the law enforcement technique must be so outrageous that it is fundamentally unfair and 'shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment.'" United States v. Ofshe, 817 F.2d 1508, 1516 (11th Cir. 1987) (quoting United States v. Russell, 411 U.S. 423, 432 (1973)). The only case Defendant cites in support of his argument that the Government violated his due process rights is United States v. Koerber, 966 F. Supp. 2d 1207 (D. Utah 2013).

(Doc. 46, at 2).[4]

But the <u>Koerber</u> Court recognized that "*covert or undercover* noncustodial, pre-indictment *ex parte* contact by law enforcement personnel in the investigative phase" does not run afoul of the due process clause as it is a "well-established investigatory technique." 966 F. Supp. 2d at 1232. To the extent <u>Koerber</u> suggests that any violation of a rule like Rule 4.2 is *per se* a constitutional violation, such a holding is contrary to the binding authority in this Circuit. <u>See</u> 966 F. Supp. 2d at 1233; <u>Lowery</u>, 166 F.3d at 1124. Again, the Court must follow Eleventh Circuit precedent. <u>Burgest</u>, 829 F.3d at 1287. Defendant cites no authority, and the Court has found none, holding that the mere use of a covert informant to speak with him during the investigative phase—even if the Government knew he was represented—is the kind of technique that is "so outrageous that it is fundamentally unfair and shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." <u>Ofshe</u>, 817 F.2d at 1516 (quotation marks omitted); <u>but cf.</u> <u>United States v. Hammad</u>, 858 F.2d 834, 836 (2d Cir. 1988) (holding that a covert informant's use of "a sham

---

    [4] In his reply brief, Defendant also cites <u>United States v. Cooper</u>, 203 F.3d 1279 (11th Cir. 2000). (Doc. 52). But the motion to suppress in <u>Cooper</u> has nothing to do with due process rights or the specific situation at bar and thus does not support Defendant's position. <u>See</u> 203 F.3d at 1283-85.

subpoena supplied by the prosecutor" can violate a defendant's due process rights).

Even if the Government's conduct violated Georgia's Rule of Professional Conduct 4.2 *and* Defendant's Fifth Amendment due process rights, such a violation would not automatically entitle Defendant to suppression of the recording.  In a somewhat similar situation, the Second Circuit held "the government should not have its case prejudiced by suppression of its evidence when the law was previously unsettled in this area."  Hammad, 858 F.2d at 842.  Given the lack of any clear precedent in support of Defendant's position, and the great weight of authority against it, the Court would not recommend suppression even if the Government's conduct were ultimately determined to run afoul of Rule 4.2.  For each of the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**.  (Docs. 43, 46).

## CONCLUSION

For the reasons outlined above, Defendant's Motion for a Bill of Particulars and his Motion for Early Disclosure of Specific Brady Information are **DENIED**. (Docs. 40, 41).  The Court further **RECOMMENDS** that Defendant's Motions to Suppress be **DENIED**.  (Docs. 43, 46).

**SO ORDERED, REPORTED, AND RECOMMENDED,** this __25__ day of

February, 2020.


_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE