

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 2 0 2021

Kevin P. Weimer, Clerk
By _____
Deputy Clerk

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Criminal Indictment |
| *v.* | (Second Superseding) |
| LOHRASB "JEFF" JAFARI | No. 1:19-CR-00078 |

THE GRAND JURY CHARGES THAT:

## COUNT 1

*(Conspiracy to Commit Bribery - 18 U.S.C. § 371)*

1. Beginning on a date unknown, but at least from in or about 2014 to in or about January 2017, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly and willfully conspired, agreed, and had a tacit understanding with others, including Adam Smith, an agent of the City of Atlanta government, a local government, to corruptly give, offer, and agree to give a thing of value to Smith, with the intent to influence and reward Smith in connection with a transaction and series of transactions of the City of Atlanta involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## Background

At all times relevant to this indictment:

2. PRAD Group, Inc. ("PRAD Group") was an architectural, design, and construction management and services firm with its headquarters and primary place of business in Atlanta, Georgia. Since 1984, PRAD Group performed architectural, design, and engineering services for the City of Atlanta, Georgia

("City of Atlanta") and other municipal governments. During the times relevant to this indictment, JAFARI, was the Executive Vice President of PRAD Group. In that capacity, he was responsible for overseeing all of PRAD Group's activities, including but not limited to PRAD Group's work for the City of Atlanta.

3. From 2003 to February 21, 2017, Adam Smith served as the Chief Procurement Officer for the City of Atlanta. As the Chief Procurement Officer, Smith oversaw the City of Atlanta's purchasing activities and its expenditure of billions of dollars of public money for projects such as the overhaul of the City of Atlanta's water and sewer system and the expansion of and concessions projects for Hartsfield-Jackson Atlanta International Airport.

4. During Smith's tenure as the Chief Procurement Officer, the City of Atlanta awarded contracts worth millions of dollars to PRAD Group and joint venture projects of which PRAD Group was a partner. PRAD Group also submitted task orders and invoices for ongoing work with the City of Atlanta during this time, which were routed through Smith's Department of Procurement for approval.

5. The City of Atlanta government was a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance during each calendar year from 2014 to 2017.

### Manner and Means

6. Beginning on a date unknown, but from at least 2014 to January 2017, JAFARI met privately with Smith on multiple occasions, frequently at local restaurants. During these meetings, JAFARI and Smith discussed City of Atlanta procurement projects, bids, and solicitations. Often at the time of these meetings,

2

JAFARI was actively seeking additional work and/or assistance with ongoing projects with the City of Atlanta.

7.  After most of the meetings, JAFARI paid Smith approximately $1,000 in cash. In return for these bribe payments, JAFARI expected Smith to use his position and power as City of Atlanta's Chief Procurement Officer to assist JAFARI with contracting/procurement with the City of Atlanta and furnish him with future benefits and favors when needed.

8.  Furthermore, in exchange for those cash payments:

   a.  Smith met with JAFARI on a regular basis, during which Smith provided JAFARI with information and counsel regarding the City of Atlanta's procurement processes (among other information);

   b.  When PRAD Group or a joint venture in which PRAD Group was a partner became the successful bidder on a City of Atlanta contract or Request for Proposal, Smith approved and submitted the award of such procurement projects or bids to the City of Atlanta's mayor and city council for final authorization;

   c.  When PRAD Group or a joint venture in which PRAD Group was a partner received additional work on an existing City of Atlanta contract, Smith approved task and/or purchase orders for those projects; and

   d.  Smith never disclosed his ongoing financial relationship with JAFARI, and Smith falsely attested on his annual City of Atlanta Financial Disclosure Statements that he had not received more than $5,000 in annual income from JAFARI.

9.  From at least 2014 to January 2017, JAFARI paid Smith more than $40,000 in cash with the intent to influence Smith in his role as City of Atlanta's Chief Procurement Officer. Smith accepted the money knowing JAFARI's intentions.

### Overt Acts

10. In furtherance of the conspiracy, JAFARI and Smith committed at least one of the following overt acts, in the Northern District of Georgia:

a. On November 18, 2016, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

b. On November 30, 2016, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

c. On December 7, 2016, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

d. On December 14, 2016, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

e. On December 20, 2016, JAFARI and Smith met at a restaurant on Lenox Road NE in Atlanta, Georgia. JAFARI and Smith had a conversation in

the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

f. On January 11, 2017, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

g. On January 13, 2017, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

h. On January 18, 2017, JAFARI and Smith met at a restaurant on Monroe Drive in Atlanta, Georgia. JAFARI and Smith had a conversation in the restaurant. After that conversation, JAFARI gave Smith cash in the restaurant bathroom.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2

*(Bribery - 18 U.S.C. § 666)*

11.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

12.   From on or about January 1, 2014 to on or about December 31, 2014, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to Adam Smith, an agent of the City of Atlanta government, with the intent to influence and reward Smith in connection with a transaction and series of transactions of the City of Atlanta

involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 3

*(Bribery - 18 U.S.C. § 666)*

13.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

14.   From on or about January 1, 2015 to on or about December 31, 2015, in the Northern District of Georgia, the defendant, LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to Adam Smith, an agent of the City of Atlanta government, with the intent to influence and reward Smith in connection with a transaction and series of transactions of the City of Atlanta involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 4

*(Bribery - 18 U.S.C. § 666)*

15.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

16.   From on or about January 1, 2016 to on or about December 31, 2016, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to Adam Smith, an agent of the City of Atlanta government, with the intent to influence and reward Smith in connection with a transaction and series of transactions of the City of Atlanta involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 5

*(Bribery - 18 U.S.C. § 666)*

17.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

18.   From on or about January 1, 2017 to on or about January 22, 2017, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to Adam Smith, an agent of the City of Atlanta government , with the intent to influence and reward Smith in connection with a transaction and series of transactions of the City of Atlanta involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 6

*(Bribery - 18 U.S.C. § 666)*

19.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

20.   From April 2011 through May 20, 2016, Jo Ann Macrina served as the Commissioner of the Department of Watershed Management for the City of Atlanta. As Watershed's Commissioner, Macrina held a cabinet-level position from which she oversaw the City of Atlanta's drinking water and wastewater systems and was responsible for an annual budget exceeding $100 million.

21.   At the beginning of her service, Macrina signed an Employee Ethics Pledge with the City of Atlanta in which she agreed to, among other things:

a. Not use her position to secure special advantage or benefit for herself, her family, or others, and avoid situations that may lead to the perception of an impropriety;

b. Not solicit or accept money or a personal gift, meal, ticket, travel, entertainment, or other thing of value from a prohibited source; and

c. Not be paid to work on any matter in which she was directly concerned, personally participated, or actively considered, or about which she acquired knowledge with the City within one year of leaving City employment.

22. Given her cabinet-level position, Macrina also signed annually a Financial Disclosure Statement certifying that she had not received more than $5,000 in annual income from any corporation, partnership, proprietorship, or other business entity, aside from the City of Atlanta.

23. From at least 2013 through May 20, 2016, Macrina met with JAFARI alone and with others, including other employees of the City of Atlanta, to discuss City of Atlanta procurement projects, bids, and solicitations. Often at the time of these meetings, JAFARI was actively seeking contracts, projects, and work with the City of Atlanta. During this same period, Macrina spoke with JAFARI thousands of times by telephone.

24. During this time, Macrina recommended to JAFARI that PRAD Group hire her close relative. Based on that recommendation, JAFARI hired Macrina's relative and paid that person for his work.

25. Sometime before May 2016, JAFARI said that he planned for Macrina to leave the City of Atlanta government and to hire her to work for PRAD Group.

26.    In April and May 2016, JAFARI gave Macrina money and other items of value, including but not limited to:

a.  $10,000 in cash;

b.  Jewelry;

c.  A room at a luxury hotel in Dubai, UAE; and

d.  Landscaping work at her metro-Atlanta home.

Macrina did not disclose any of the money, items, or services on her City of Atlanta Financial Disclosure Statement.

27.    On May 20, 2016, Macrina's employment ended with the City of Atlanta. Shortly thereafter, Macrina began working for JAFARI and PRAD Group. Between June 2016 and September 2016, PRAD Group paid Macrina $30,000 in four separate payments. Macrina did not disclose this income on her City of Atlanta Financial Disclosure Statement.

28.    From on or about January 1, 2016 to on or about May 20, 2016, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to Jo Ann Macrina, an agent of the City of Atlanta government, with the intent to influence and reward Macrina in connection with a transaction and series of transactions of the City of Atlanta involving at least $5,000.

All in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 7

*(Bribery - 18 U.S.C. § 666)*

29.    The Grand Jury incorporates by reference the factual allegations contained in paragraph 2 of the indictment.   The DeKalb County (Georgia) government was

a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance in 2014.

30.   On or about April 8, 2014, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to an official and agent of the DeKalb County government, with the intent to influence and reward that official in connection with a transaction and series of transactions of DeKalb County involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 8

### (Bribery - 18 U.S.C. § 666)

31.   The Grand Jury incorporates by reference the factual allegations contained in paragraph 2 of the indictment. The DeKalb County (Georgia) government was a local government that received benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance in 2014.

32.   On or about August 21, 2014, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, corruptly gave, offered, and agreed to give a thing of value to an official and agent of the DeKalb County government, with the intent to influence and reward that official in connection with a transaction and series of transactions of DeKalb County involving at least $5,000, in violation of Title 18, United States Code, Section 666(a)(2).

## COUNT 9

*(Tampering with a Witness - 18 U.S.C. § 1512)*

33.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

34.   On or about February 1, 2017, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly attempted to intimidate, threaten, and corruptly persuade Adam Smith, then Chief Procurement Officer of the City of Atlanta, to provide false information to a law enforcement officer with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense, by making the following recorded statements to Smith, among other recorded statements:

a.   JAFARI told Smith that Smith had to deny taking money from JAFARI;

b.   JAFARI instructed Smith to tell federal law enforcement officers that if Smith took money from JAFARI that those funds were loans from JAFARI that Smith later repaid. JAFARI told Smith, "you've gotta deny the money" and say that the payments were "a loan;"

c.   JAFARI instructed Smith to tell federal law enforcement officers that if Smith received money from JAFARI that Smith received less than JAFARI actually paid him. JAFARI instructed Smith to say it was "[n]ever $1,000. Listen to me. Don't ever say $1,000 because that is one year jail;"

d.   JAFARI told Smith that if Smith described the money he received from JAFARI as loans that "we can both walk away from it." JAFARI also said to

Smith, "You've gotta back off from this," referring to Smith's statements to federal law enforcement; and

e. JAFARI told Smith that they should coordinate their stories about JAFARI's payments to Smith and that they had to "stay on the same page." JAFARI stated, "Adam, we're in trouble if you don't – if you cave in, I'm f----ed."

All in violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT 10

### *(Tampering with a Witness - 18 U.S.C. § 1512)*

35.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

36.   On a date unknown to the Grand Jury, but by at least in or about October 2017, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly attempted to corruptly persuade F.S. to provide false information to a law enforcement officer with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a federal offense, by instructing F.S. to falsely tell federal law enforcement officers that money and items of value provided to Jo Ann Macrina were in fact given to and purchased for JAFARI, members of JAFARI's family, or others, in violation of Title 18, United States Code, Section 1512(b)(3).

## COUNT 11

### *(Tax Evasion - 26 U.S.C. § 7201)*

37.   The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

38. During calendar year 2014, defendant LOHRASB "JEFF" JAFARI, a resident of the state of Georgia, received taxable income, upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on and before April 15, 2015, as required by law, to any proper officer of the Internal Revenue Service ("IRS"), and to pay the income tax to the IRS, JAFARI, from in or about January 2014 through April 15, 2015, in the Northern District of Georgia, willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States of America, an amount of at least $150,000, by committing the following affirmative acts, among others:

    a.  JAFARI withdrew large amounts of cash from corporate bank accounts for personal use;

    b.  JAFARI used corporate funds, drawn on corporate bank accounts, to conduct personal business, including, but not limited to, landscaping at his home, payments for a personal residence, and veterinary bills for family pets;

    c.  JAFARI transferred corporate funds to his wife's personal bank account;

    d.  JAFARI directed his in-house bookkeeper to not record his cash withdrawals, personal expenditures, and monetary transfers in a manner in which they would be reported as income for him to the IRS; and

    e.  JAFARI directed his in-house bookkeeper to supply these false internal accounting records to his tax return preparer for the preparation of tax returns for PRAD Group.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 12

### *(Tax Evasion - 26 U.S.C. § 7201)*

39.    The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

40.    During calendar year 2015, defendant LOHRASB "JEFF" JAFARI, a resident of the state of Georgia, received taxable income, upon which there was income tax due and owing to the United States of America.  Knowing the foregoing facts and failing to make an income tax return on and before October 17, 2016, as required by law, to any proper officer of the Internal Revenue Service ("IRS"), and to pay the income tax to the IRS, JAFARI, from in or about January 2015 through October 17, 2016, in the Northern District of Georgia, willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States of America, an amount of at least $300,000, by committing the following affirmative acts, among others:

a.  JAFARI withdrew large amounts of cash from corporate bank accounts for personal use;

b.  JAFARI used corporate funds, drawn on corporate bank accounts, to conduct personal business, including, but not limited to, landscaping at his home, payments for a personal credit card, and dry-cleaning services; and

c.  JAFARI directed his in-house bookkeeper to not record his cash withdrawals and personal expenditures in a manner in which they would be reported as income for him to the IRS.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 13

*(Tax Evasion - 26 U.S.C. § 7201)*

41. The Grand Jury incorporates by reference the factual allegations contained in paragraphs 1 through 10 of the indictment.

42. During calendar year 2016, defendant LOHRASB "JEFF" JAFARI, a resident of the state of Georgia, received taxable income, upon which there was income tax due and owing to the United States of America. Knowing the foregoing facts and failing to make an income tax return on and before October 16, 2017, as required by law, to any proper officer of the Internal Revenue Service ("IRS"), and to pay the income tax to the IRS, JAFARI, from in or about January 2016 through October 16, 2017, in the Northern District of Georgia, willfully attempted to evade and defeat the assessment of income tax due and owing by him to the United States of America, an amount of at least $700,000, by committing the following affirmative acts, among others:

a. JAFARI withdrew large amounts of cash from corporate bank accounts for personal use;

b. JAFARI used corporate funds, drawn on corporate bank accounts, to conduct personal business, including, but not limited to, landscaping at his home, personal credit card payments, payments for a personal residence, and the purchase of four luxury vehicles;

c. JAFARI transferred corporate funds to his wife's personal bank account;

d. JAFARI directed his in-house bookkeeper to not record his cash withdrawals and personal expenditures in a manner in which they would be reported as income for him to the IRS; and

15

e. JAFARI registered assets in a nominee name, including, but not limited to, a 2008 Bentley Continental and a 2014 Bentley Flying Spur both registered in the name of the PRAD Group.

All in violation of Title 26, United States Code, Section 7201.

## COUNTS 14 - 17

*(Money Laundering/Tax Evasion -18 U.S.C. §1956(a)(1)(A)(ii))*

43.   The Grand Jury re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 10, 38, 40, and 42 of the indictment.

44.   On or about the dates set forth below, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce, as listed below, which involved the proceeds of a specified unlawful activity, that is, bribery as charged in Counts 2 through 4 of the indictment, with the intent to engage in conduct constituting a violation of Title 26, United States Code, Section 7201, to wit, tax evasion, as charged in Count 13 of the indictment, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| Count | Date | Financial Transaction |
|-------|------|----------------------|
| 14 | 08/24/2016 | $40,000 withdrawal by cashier's check from PNC Account Number ending 6394 |
| 15 | 09/09/2016 | $5,000 cash withdrawal from PNC Account Number ending 7828 |
| 16 | 09/12/2016 | $6,000 cash withdrawal from PNC Account Number ending 7828 |
| 17 | 09/14/2016 | $20,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 7733 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(A)(ii).

## COUNT 18

*(Money Laundering/Tax Evasion - 18 U.S.C. §1956(a)(1)(A)(ii))*

45.    The Grand Jury re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 10, 38, 40, and 42 of the indictment.

46.    On or about January 3, 2017, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly conducted and attempted to conduct a financial transaction affecting interstate and foreign commerce, to wit, paid Bentley Atlanta $20,000 by check from PNC Bank Account Number ending 3696, which involved the proceeds of a specified unlawful activity, that is, bribery as charged in Counts 2 through 4 of the indictment, with the intent to engage in conduct constituting tax evasion, a violation of Title 26, United States Code, Section 7201, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(ii).

## COUNTS 19 - 38

*(Money Laundering - 18 U.S.C. § 1957)*

47.   The Grand Jury re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 10 of the indictment.

48.   On or about the dates set forth below, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly engaged and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, and transfer of United States currency as described below, such property having been derived from a specified unlawful activity, that is, bribery, as charged in Counts 2 through 4 of the indictment:

| Count | Date | Financial Transaction |
|-------|------|----------------------|
| 19 | 06/17/2016 | $160,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 6394 |
| 20 | 07/12/2016 | $120,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 21 | 07/14/2016 | $240,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 22 | 07/14/2016 | $15,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 3696 |
| 23 | 08/18/2016 | $15,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 24 | 08/24/2016 | $50,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 25 | 08/24/2016 | $150,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 6394 |
| 26 | 08/24/2016 | $40,000 withdrawal from PNC Account Number ending 6394 and purchase of Cashier's Check |

| 27 | 09/09/2016 | $20,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 28 | 09/13/2016 | $30,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 29 | 09/14/2016 | $30,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 30 | 09/14/2016 | $20,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 7733 |
| 31 | 09/14/2016 | $15,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 3696 |
| 32 | 09/15/2016 | $12,000 transfer from PNC Account Number ending 7733 to PNC Account Number ending 6133 |
| 33 | 09/19/2016 | $11,819 withdrawal from PNC Account Number ending 6133 and purchase of Cashier's Check |
| 34 | 09/19/2016 | $20,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 35 | 11/21/2016 | $60,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 36 | 01/03/2017 | $20,000 transfer from PNC Account Number ending 3027 to PNC Account Number ending 7828 |
| 37 | 01/03/2017 | $20,000 transfer from PNC Account Number ending 7828 to PNC Account Number ending 3696 |
| 38 | 01/03/2017 | $20,000 check payable to Bentley Atlanta from PNC Account Number ending 3696 |

All in violation of Title 18, United States Code, Section 1957.

## COUNTS 39 - 52

*(Structuring - 31 U.S.C. §§ 5324(a)(1) and 5324(d))*

49.   The Grand Jury re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 10 of the indictment.

50.  At all times relevant to the indictment, Title 31, United States Code, Section 5313(a), and the regulations promulgated thereunder, required that financial institutions file Currency Transaction Reports of each deposit, withdrawal,

exchange of currency or other payment and transfer, by, through, and to such financial institution that involved a transaction in currency of more than $10,000.

51.   On or about the dates specified as to each count below, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, caused and attempted to cause PNC Bank, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period:

| Count | Date | Withdrawal Amount | Bank Account Number |
|-------|------|-------------------|---------------------|
| 39 | 07/28/2014<br>07/28/2014 | $3,000<br>$1,000 | PNC Account Number ending in 6394 |
|  | 07/28/2014 | $3,000 | Check # 1029 Cashed |
|  | 07/28/2014<br>07/28/2014 | $3,800<br>$3,800 | PNC Account Number ending in 7435 |
| 40 | 09/05/2014<br>09/05/2014<br>09/08/2014 | $2,000<br>$6,000<br>$7,000 | PNC Account Number ending in 6394 |
| 41 | 02/23/2015 | $6,700 | PNC Account Number ending in 6394 |
|  | 02/23/2015 | $8,000 | PNC Account Number ending in 7435 |
|  | 02/23/2015 | $9,000 | PNC Account Number ending in 6133 |
| 42 | 04/07/2015<br>04/08/2015 | $9,500<br>$1,500 | PNC Account Number ending in 6394 |
| 43 | 04/08/2015<br>04/09/2015 | $8,000<br>$4,000 | PNC Account Number ending in 7828 |
| 44 | 04/27/2015<br>04/28/2015 | $9,400<br>$2,500 | PNC Account Number ending in 6374 |

| 45 | 07/30/2015 | $9,500 | PNC Account Number ending in 6374 |
| | 07/30/2015 | $8,000 | PNC Account Number ending in 7733 |
| 46 | 08/05/2015 | $2,500 | PNC Account Number ending in 7828 |
| | 08/05/2015 | $9,000 | PNC Account Number ending in 7733 |
| | 08/09/2015 | $2,000 | PNC Account Number ending in 6394 |
| 47 | 09/10/2015 09/11/2015 | $6,000 $5,000 | PNC Account Number ending in 7828 |
| | 09/11/2015 09/11/2015 | $9,000 $2,000 | PNC Account Number ending in 6394 |
| 48 | 12/23/2015 12/24/2015 | $6,000 $6,000 | PNC Account Number ending in 6394 |
| 49 | 04/20/2016 04/22/2016 | $9,800 $9,800 | PNC Account Number ending in 7828 |
| 50 | 06/07/2016 06/07/2016 06/09/2016 | $5,000 $2,000 $5,000 | PNC Account Number ending in 7828 |
| 51 | 06/20/2016 06/22/2016 | $9,800 $9,800 | PNC Account Number ending in 7828 |
| 52 | 12/21/2016 12/22/2016 12/23/2016 | $5,000 $8,500 $9,000 | PNC Account Number ending in 7828 |

All in violation of Title 31, United States Code, Sections 5324(a)(1) and 5324(d).

## COUNT 53

*(Structuring - 31 U.S.C. §§ 5324(a)(1) and 5324(d))*

52. The Grand Jury re-alleges and incorporates herein by reference the factual allegations set forth in paragraphs 1 through 10 and 50 of the indictment.

53. On or about June 12, 2018, in the Northern District of Georgia, defendant LOHRASB "JEFF" JAFARI, knowingly, and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a), and any

regulation prescribed thereunder, caused and attempted to cause PNC Bank, a domestic financial institution, to fail to file a report required under Title 31, United States Code, Section 5313(a), and any regulation prescribed thereunder, and did so as part of a pattern of illegal activity involving more than $100,000 in a 12-month period:

| Count | Check Number | Cashed Check Amount |
|-------|-------------|---------------------|
| 53 | Fidelity Bank Check 530 for Account Number Ending 1913 | $9,850 |
| | Fidelity Bank Check 531 for Account Number Ending 1913 | $9,850 |

All in violation of Title 31, United States Code, Sections 5324(a)(3) and 5324(d).

### Forfeiture Provision

54. Upon conviction of one or more of the offenses alleged in Counts 1 through 8 of the indictment, defendant LOHRASB "JEFF" JAFARI, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of said violations, including but not limited to:

    a. Real Property located at 9295 Old Southwick Pass, Alpharetta, Georgia; and

    b. Money Judgment: a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.

55. Upon conviction of one or more of the offenses alleged in Counts 14 through 38 of the indictment, defendant LOHRASB "JEFF" JAFARI, shall forfeit to the

22

United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in or traceable to said violation, including but not limited to:

    a. Real Property located at 9295 Old Southwick Pass, Alpharetta, Georgia; and

    b. Money Judgment: a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.

56. Upon conviction of one or more of the offenses alleged in Counts 39 through 53 of the indictment, defendant LOHRASB "JEFF" JAFARI, shall forfeit to the United States, pursuant to Title 31, United States Code, Section 5317, any and all property, real or personal, involved in or traceable to said violation, including but not limited to:

    a. Real Property located at 9295 Old Southwick Pass, Alpharetta, Georgia; and

    b. Money Judgment: a sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses.

57. If, as a result of any act or omission of defendant LOHRASB "JEFF" JAFARI, any property subject to forfeiture that:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

the United States intends, pursuant to Title 18, United States Code, Sections 982(b)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c) to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A _TRUE_ BILL

FOREPERSON

KURT R. ERSKINE
  *United States Attorney*

JEFFREY W. DAVIS
  *Assistant United States Attorney*
Georgia Bar No. 426418

NATHAN P. KITCHENS
  *Assistant United States Attorney*
Georgia Bar No. 263930

Jolee Porter
  *Trial Attorney*
Georgia Bar No. 462455

Todd A. Ellinwood
  *Trial Attorney*

600 U.S. Courthouse ▪ 75 Ted Turner Drive, SW
Atlanta, GA 30303 ▪ 404-581-6000

24