```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF GEORGIA
 2                          ATLANTA DIVISION


 3


 4    UNITED STATES OF AMERICA, )
                                )
 5              PLAINTIFF,       )
                                )
 6     -VS-                      )  DOCKET NO. 1:19-CR-00078-SCJ-LTW-1
                                )
 7    LOHRASB JAFARI,            )
                                )
 8              DEFENDANT.       )
      _____)
 9


10              TRANSCRIPT OF GUILTY PLEA PROCEEDINGS
                BEFORE THE HONORABLE STEVE C. JONES
11                 UNITED STATES DISTRICT JUDGE
                    WEDNESDAY, APRIL 19, 2023
12


13


14


15    APPEARANCES:

16    ON BEHALF OF THE GOVERNMENT:
              JEFFERY W. DAVIS, ESQ.
17            JOLEE PORTER, ESQ.
              NATHAN PARKER KITCHENS, ESQ.
18            Assistant United States Attorneys

19
      ON BEHALF OF THE DEFENDANT:
20            STEVEN HOWARD SADOW, ESQ.

21

22
              VIOLA S. ZBOROWSKI, RDR, FAPR, CMR, CRR, RPR, CRC
23        OFFICIAL COURT REPORTER TO THE HONORABLE STEVE C. JONES
                     UNITED STATES DISTRICT COURT
24                          ATLANTA, GEORGIA
                             404-215-1479
25              VIOLA_ZBOROWSKI@GAND.USCOURTS.GOV
```

```
 1                    (HELD IN OPEN COURT AT 9:30 A.M.)
 2              THE COURT:  All right.  Ms. Wright, call the case for
 3  the day.
 4              THE DEPUTY CLERK:  Yes, sir.  The Court calls the United
 5  States of America v. Lohrasb Jafari, Criminal Case No. 1:19-CR-78.
 6              THE COURT:  Representing the government this morning?
 7              MR. DAVIS:  Good morning, Judge.  Jeffrey Davis, Jolee
 8  Porter, Nathan Kitchens, and Todd Ellinwood.
 9              THE COURT:  Good morning to all of you-all.
10              Representing the defense?
11              MR. SADOW:  Steve Sadow.  Just me.
12              THE COURT:  Mr. Jafari, I ask you to stand and raise
13  your right hand.  Ms. Wright is going to administer an oath to
14  you.
15                              ******
16                          LOHRASB JAFARI,
17              having been duly sworn, testified as follows:
18                              ******
19              THE COURT:  You may be seated, sir.
20              Mr. Davis, I ask you to verify the signature on the
21  guilty plea and plea agreement.
22              MR. DAVIS:  Yes, sir.
23              Mr. Jafari, I'm showing you a document entitled, "Guilty
24  Plea and Plea Agreement."  Have you had the opportunity to review
25  this document, sir?
```

1          THE DEFENDANT:  Yes, sir.

2          MR. DAVIS:  Have you signed this document on page 18

3  above the line that says signature --

4          THE COURT:  He needs to relax a little bit.  He looks

5  very uptight.  I'm sorry, Mr. Davis.  I interrupted you.  Just

6  relax, sir.  Just relax.

7          THE DEFENDANT:  Thank you.  Thank you, Judge.

8          THE COURT:  Mr. Davis, I apologize.  Do you want to

9  start over again?

10         MR. DAVIS:  Yes, sir.

11         Mr. Jafari, have you signed this document on page 18?

12         THE DEFENDANT:  Yes.

13         MR. DAVIS:  Have you also signed it on page 19?

14         THE DEFENDANT:  Yes.

15         MR. DAVIS:  By signing this document, is it your

16  intention to plead guilty to Counts 1, 7, and 13?

17         THE DEFENDANT:  Yes, sir.

18         MR. DAVIS:  Mr. Sadow, have you also had an opportunity

19  to sign this document on pages 18 and page 19?

20         MR. SADOW:  I have.

21         MR. DAVIS:  Your Honor, this document has been signed by

22  a host of people from the United States Attorney's Office, and at

23  this time the government will tender the Guilty Plea and Plea

24  Agreement to the Court.

25         THE COURT:  Mr. Jafari, do you need you a drink?  I have

1  a list of questions I have to ask you.  You just need to relax,

2  drink some water.  If you don't understand anything I say to you,

3  you turn to Mr. Sadow and ask him to explain it to you.  Okay?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  Before accepting your guilty plea, there are

6  a number of questions I must ask you to be sure that it is a valid

7  plea.  If you do not understand any of my questions, please say so

8  because it is essential to a valid plea that you understand each

9  question before you answer.  Will you agree to do that, sir?

10           THE DEFENDANT:  I didn't hear.

11           (A discussion off the record.)

12           THE DEFENDANT:  Yes, sir.

13           THE COURT:  Mr. Jafari, just about two minutes ago you

14 stood up and raised your hand and you took an oath.  You

15 understand the oath you took, you took the oath to tell the truth.

16 If you do not tell the truth, you could be subject to the penalty

17 of perjury or making a false statement.

18           In other words, I'm going to ask you questions and you

19 have to tell me the truth.  If you don't tell me the truth, you

20 could be subject to being charged with perjury or making a false

21 statement.

22           THE DEFENDANT:  I do.

23           THE COURT:  How old are you, sir?

24           THE DEFENDANT:  I was born December 27, 1950.

25           THE COURT:  So you're, what, 73 years old?

1          THE DEFENDANT:  72 going to 73, Judge.

2          THE COURT:  How far did you go in school?  How much

3   education have you received?

4          THE DEFENDANT:  Well, I went to Georgia Tech, graduated

5   mechanical engineer, and also Southern Tech, mechanical engineer.

6          THE COURT:  All right.

7          THE DEFENDANT:  And I studied master and Ph.D. in

8   aerospace institute.

9          THE COURT:  You have a very good education.

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Now, sir, did you review or read the Guilty

12   Plea and Plea Agreement?  Did you read that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you have any questions about it?

15         THE DEFENDANT:  No, sir.

16         THE COURT:  Now, do you -- sir, have you taken any kind

17   of drugs, medicine, pills, drunk any alcoholic beverages in the

18   past 24 hours?

19         THE DEFENDANT:  I don't drink.

20         THE COURT:  Take any medicine?

21         THE DEFENDANT:  Yes, I do.

22         THE COURT:  What type of medicine do you take, sir?

23         THE DEFENDANT:  I have very high blood pressure.  I take

24   blood pressure pill, and I have taken -- I have huge anxiety.  I

25   take Xanax.  And I also have very bad skin -- forgot.  I cannot

1  think.

2          THE COURT:  Do you take pills for your skin condition?

3          MR. SADOW:  You take something for your skin condition?

4          THE DEFENDANT:  Yes.  The name is right here.

5          THE COURT:  That's no problem.  That's no problem.

6          Is there any medications you take affecting your

7  thinking here this morning?

8          THE DEFENDANT:  No, sir, I'm clear.

9          THE COURT:  Do you understand what you are here for

10  today?

11          THE DEFENDANT:  Pardon me?

12          THE COURT:  What are you here for today?

13          THE DEFENDANT:  I'm here for pleading guilty.

14          THE COURT:  Now, sir, the next question I ask you has

15  nothing to do with your citizenship, but I have to ask this

16  question of everyone.

17          Do you understand that if convicted, a defendant who is

18  not a United States citizen may be removed from the United States,

19  denied citizenship, and denied admission to the United States in

20  the future?

21          THE DEFENDANT:  Yes.  I have a hard time hearing you;

22  very bad, Judge.

23          THE COURT:  Can you turn mine up a little bit, Pamela.

24          THE DEFENDANT:  It's echoing.

25          THE COURT:  It is the Court's understanding that you are

1  a United Stated citizen; correct?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Now, sir, do you understand that by pleading

4  guilty, you've given up a number of rights that you have under the

5  constitution and the laws of the United States.

6          I have a series of questions that I must ask you to be

7  sure you understand the rights you are giving up by pleading

8  guilty here this morning.

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Do you understand that under the

11  constitution and laws of the United States, you have the right to

12  plead not guilty and maintain your plea of not guilty to and

13  through a trial by jury?

14         THE DEFENDANT:  I do understand that.

15         THE COURT:  Do you understand you are entitled to a

16  speedy and public trial by a jury or a judge on the charge or

17  charges contained in the indictment?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand you have the right to have

20  an attorney, Mr. Sadow, assist you throughout the trial of the

21  case if you had a trial?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Do you understand at trial you would be

24  presumed innocent and the government would have to overcome that

25  presumption with admissible evidence and proof beyond a reasonable

1  doubt?

2       THE DEFENDANT:  Yes, sir.

3       THE COURT:  Do you understand you would not have to

4  prove that you were innocent?

5       THE DEFENDANT:  Yes, sir.

6       THE COURT:  Do you understand you have the right at

7  trial to subpoena witnesses and compel their appearance in court

8  on your behalf?  In other words, you have the right to make people

9  come to court on your behalf?

10       THE DEFENDANT:  Yes, sir.

11       THE COURT:  Do you understand during the course of the

12  trial, the witnesses for the government have to come to court and

13  testify in your presence?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Do you understand your counsel, Mr. Sadow,

16  can cross-examine the witnesses for the government, object to

17  evidence offered by the government, and offer evidence on your

18  behalf?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Do you understand also at trial you would

21  have the right to testify if you choose to do so, and you also

22  have the right not to testify?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Do you understand you have the right at

25  trial to have a jury render a unanimous verdict before you could

1  be convicted?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  If I accept your plea, do you understand you

4  will waive your right to a trial?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Do you understand that there will be no

7  trial and I will simply enter a judgment of guilty and sentence

8  you on the basis of your guilty plea?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  By pleading guilty, do you understand you

11  also have to waive your right not to incriminate yourself, because

12  I will have to ask you questions about what you did in order to

13  satisfy myself that you are guilty as charged, and you also have

14  to admit your guilt?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Are you willing to waive and give up your

17  right to a trial and other rights I just discussed with you?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Has anybody used any force, threat of force,

20  or made you come in here this morning and enter this plea of

21  guilty?

22          THE DEFENDANT:  No, sir.

23          THE COURT:  Are you entering this plea of guilty freely

24  and voluntarily?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  At this time, I ask Mr. Davis, the Assistant

2    United States Attorney, to summarize the terms of any plea

3    agreement in this case.

4          MR. DAVIS:  Yes, Your Honor.

5          Paragraph one of the plea agreement states that the

6    defendant is pleading guilty to Counts 1, 7, and 13 of the

7    indictment because he is, in fact, guilty.

8          As already discussed by the Court, paragraphs two

9    through six address the rights that the defendant is waiving

10   pursuant to his guilty plea.

11         Paragraph 7 lists the maximum and any mandatory minimum

12   penalties associated with the defendant's guilty pleas.

13         Paragraph 8 states the defendant understands that the

14   Court will consider the United States sentencing guidelines, but

15   was nevertheless free to sentence the defendant to the statutory

16   maximum for each offense of conviction.

17         Paragraph 9 addresses the immigration consequences, if

18   any, associated with the defendant's plea of guilty.

19         Paragraph 10 is an introductory paragraph to the

20   agreements between the parties.

21         Paragraph 11 sets forth the joint recommendations of the

22   parties as to the applicable sentencing guidelines.

23         Paragraph 12 states that pursuant to the Court's

24   standing order and Federal Rule of Criminal Procedure 48, the

25   government will move to dismiss any remaining counts of the

1  indictment.  The defendant understands that the conduct underlying

2  those dismissed counts may still be considered by the Court in

3  determining the applicable sentence.

4          Paragraph 13 is another introductory paragraph.

5          Paragraph 14 states that the United States will

6  recommend that the defendant receive a two-level guideline

7  adjustment for acceptance of responsibility so long as the

8  defendant's conduct remains consistent with acceptance.

9          Paragraph 15 memorializes the government's right to

10 inform the Court and probation of all facts regarding the

11 defendant's case, respond to any questions about it, and correct

12 any misstatements.

13         Paragraph 16 states that should the United States

14 receive additional information about the case, it can inform both

15 the Court and probation about that evidence, and revise any

16 guideline recommendations.

17         Paragraph 17 states that unless the defendant engages in

18 conduct inconsistent with acceptance of responsibility, the

19 parties agree to recommend that the defendant will be sentenced to

20 a term of imprisonment between 51 and 63 months.

21         Paragraph 18 sets forth the defendant's agreement to pay

22 restitution.

23         Paragraph 19 through 22 set out the terms of any asset

24 forfeiture.

25         Paragraph 23 relates to the defendant's agreement to pay

1  $300 as a special assessment fee.

2          Paragraph 14 (sic) discusses the terms of any

3  restitution and fine payment.

4          Paragraphs 28 through 25 (sic) set forth the defendant's

5  financial disclosure obligations.

6          Paragraphs 29 through 37 address in amazing detail the

7  defendant's promises regarding his back taxes, and memorializes

8  the defendant's agreement to pay approximately $867,000 in

9  restitution to the IRS.

10          Paragraph 38 states that any recommendations or

11  stipulations between the parties are not binding on the Court, and

12  that the Court's decision to reject or accept a recommendation or

13  stipulation would not constitute grounds for the defendant to

14  withdraw his plea.

15          Paragraph 39 is a limited waiver of appeal.  It states

16  to the maximum extent permitted under federal law, the defendant

17  is waiving his rights to appeal his conviction and sentence or

18  collateral attack it except in three limited circumstances:

19          First, should the United States appeal the defendant's

20  sentence, he may cross-appeal.  Should the Court sentence the

21  defendant to a term of imprisonment outside of the guidelines, the

22  defendant would be allowed to appeal.  And certain types of

23  ineffective claims are exempted from the appellate waiver.

24          The next paragraph states that the defendant is waiving

25  his rights under both the Freedom of Information Act and the

1   Privacy Act to request certain records pursuant to this plea.  And

2   finally, the last paragraph is a contract integration clause.

3           THE COURT:  Thank you, Mr. Davis.

4           Now, Mr. Jafari, you just heard Mr. Davis summarize the

5   agreement, the plea agreement that you and your attorney have

6   entered into with the government.  Is the description of the plea

7   agreement as summarized by Mr. Davis your understanding of the

8   plea agreement?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Has anyone promised you anything other than

11  what's been outlined in the plea agreement?  In other words, has

12  anyone promised you anything in order to get you to enter this

13  plea of guilty?

14          (Discussion held off the record.)

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Is this the only plea agreement that you

17  have entered into with the government?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Mr. Sadow --

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  -- have you advised the defendant concerning

22  the legalities of any statements or confessions or evidence the

23  government has against him?

24          MR. SADOW:  I have, Your Honor.

25          THE COURT:  Is the defendant pleading guilty because of

 1  any illegally-obtained evidence in the possession of the

 2  government?

 3          MR. SADOW:  No, Your Honor.

 4          THE COURT:  Has the defendant took any medications,

 5  pills, drugs, alcohol, or other than what he just discussed this

 6  morning that may be affecting his actions here today?

 7          MR. SADOW:  No, Your Honor.

 8          THE COURT:  Have you reviewed the evidence in this case

 9  and believe it is in your client's best interest to plead guilty

10  to Counts 1, 7, and 13?

11          MR. SADOW:  Yes, Your Honor.

12          THE COURT:  Have you made any promises to the defendant

13  of a particular sentence in the event of a plea of guilty?  I

14  understand that the agreement is between 51 and of 63 months.  But

15  other than that, have you made any promises to the defendant even

16  regarding that?  Any promises?

17          MR. SADOW:  No.

18          THE COURT:  I don't think Mr. Jafari served any time in

19  confinement, but I still have to ask you this question.

20          Have you made any promise to the defendant of the amount

21  of credit he may receive for any time spent in federal or state

22  custody?

23          MR. SADOW:  I've explained the First Step Act and earned

24  time credits -- to the extent that anyone understands it.  Beyond

25  that, no.

1          THE COURT:  Okay.  Do you have any knowledge of any

2    other plea agreement other than the one that Mr. Davis just

3    summarized here this morning?

4          MR. SADOW:  No, sir.

5          THE COURT:  Do you know of any reason why the Court

6    should not accept this plea of guilty coming from your client this

7    morning?

8          MR. SADOW:  No, sir.

9          THE COURT:  And, finally, have you had sufficient time

10   to discuss this matter fully with your client, Mr. Jafari, prior

11   to entering a plea of guilty here this morning?

12         MR. SADOW:  Yes, Your Honor.

13         THE COURT:  Thank you, Mr. Sadow.

14         Now, Mr. Jafari, do you feel you have had sufficient

15   time to think about and discuss this matter fully with Mr. Sadow

16   prior to you entering this plea of guilty here this morning?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Are you satisfied with the job your attorney

19   has done representing you thus far?

20         THE DEFENDANT:  Yes.

21         THE COURT:  At this time, I ask Mr. Davis to state the

22   elements of the offenses alleged in the indictment to which the

23   defendant is pleading guilty.

24         MR. DAVIS:  Your Honor, the elements of conspiracy are

25   the following:

1           One, that two or more persons in some way agreed to try

2   to accomplish a shared and unlawful plan.

3           Two, that the defendant knew the unlawful purpose of the

4   plan and willfully joined in it.

5           Three, that during the conspiracy one of the

6   co-conspirators knowingly engaged in at least one overt act as set

7   forth in the indictment.

8           And four, that the overt act was committed at or about

9   the time alleged with the purpose of carrying out or accomplishing

10  some objective of the very conspiracy.

11          The elements of bribery are:

12          One, that an individual was an agent of the City of

13  Atlanta or DeKalb County, depending on the count.

14          Two, that the City of Atlanta or DeKalb County,

15  depending on the count, was a local government.  Had received in

16  any one-year period benefits in excess of $10,000 under a federal

17  program involving a grant or other form of federal assistance.

18          Three, that during the one-year period, the defendant

19  gave, offered, or agreed to give something of value to an agent of

20  the City of Atlanta or DeKalb County, depending on the count, with

21  the intent to influence or award that agent in connection with any

22  business, transaction, or series of transactions of the City of

23  Atlanta or DeKalb County involving something of value of $5,000 or

24  more.

25          And five, that in doing so -- sorry, four in doing so

1   the defendant acted corruptly.

2           The elements of tax evasion are as follows:

3           One, the defendant owed a substantial income tax.

4           Two, the defendant committed an affirmative act that

5   constituted an attempt to evade or defeat the tax.

6           And three, that the defendant in attempting to evade or

7   defect the tax, acted willfully.

8           THE COURT:  Thank you, Mr. Davis.

9           Now, Mr. Jafari, have you discussed with Mr. Sadow the

10  charges of Counts 1, 7, and 13 in the indictment which you intend

11  to plead, have you discussed these charges with Mr. Sadow?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Do you understand what you're charged with

14  doing?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  In your own words, tell me what you

17  understand you're charged with doing.

18          You don't have to think -- what you believe in your own

19  words, tell me what you are charged with doing.

20          THE DEFENDANT:  Well, I think it was --

21          (Discussion off the record.)

22          THE DEFENDANT:  I understand that I gave money to

23  Adam Smith and Morris Williams, and I have not filed my taxes.

24          THE COURT:  And did you conspire with anybody to do

25  this?

1          THE DEFENDANT:  Yes.

2          THE COURT:  At this time, Mr. Davis, I ask you to state

3   the maximum penalty and fine that can be imposed as a result of

4   plea of guilty to these charges and any mandatory minimum.

5          MR. DAVIS:  Yes, Judge.

6          With regard to Count 1, the maximum term of imprisonment

7   is five years.  There is no mandatory minimum.  A term of

8   supervised release is authorized up to three years.  The maximum

9   fine of $250,000 is applicable.  Full restitution.  A mandatory

10  special assessment of $100, and forfeiture of certain types of

11  monetary -- or a monetary judgment is appropriate.

12         As with Count 7, there is a maximum term of 10 years.

13  Also, no mandatory minimum.  Also a term of supervised release of

14  up to three years.  A fine of $250,000.  Restitution.  A mandatory

15  special assessment, and forfeiture in certain circumstances.

16         And in Count 13, there is a maximum term of five years.

17  Also, no mandatory minimum.  Term of supervised release of up to

18  three years.  A maximum fine of $250,000.  A mandatory special

19  assessment of $100 and the cost of prosecution.

20         THE COURT:  Thank you, Mr. Davis.

21         Mr. Sadow, do you agree with that?

22         MR. SADOW:  I do, Your Honor.

23         THE COURT:  Now, Mr. Jafari, do you understand the

24  maximum and minimum penalties and sentence that can be imposed as

25  a result of you pleading guilty to Counts 1, 7, and 13?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Do you also understand that you may be

3   ordered to make restitution in this case?

4          (Discussion is held off the record.)

5          THE DEFENDANT:  Yes.

6          THE COURT:  Okay.  Now, sir, the United States

7   Sentencing Commission issues guidelines for judges to follow in

8   determining a sentence in a criminal case.  Have you and Mr. Sadow

9   talked about how the Sentencing Commission guidelines may apply to

10  your case?

11         (Discussion is held off the record.)

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Do you understand it is not possible to

14  determine the guidelines of your case until and after a

15  presentence report has been completed and you and the government

16  had the opportunity to challenge the facts reported by the

17  probation officer in the presentence report?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Do you understand after it has been

20  determined what guidelines apply to a case, the judge has the

21  authority in some circumstances to impose a sentence that is more

22  severe or less severe than the sentence called for by the

23  guidelines?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Do you also understand that under certain

1  circumstances, you or the government may appeal any sentence I may

2  impose?

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  Okay.  In your agreement -- you understand

5  that as part of your plea agreement, you're giving up your right

6  to appeal your sentence unless there is an upward departure or

7  upward variance by the Court from the guidelines, an appeal by the

8  government, or a claim of ineffective assistance of counsel filed

9  by you?  Those are three ways you can appeal.

10            THE DEFENDANT:  Yes, sir.

11            THE COURT:  Do you also understand you're giving up your

12  right to collaterally attack your conviction and sentence in any

13  post-conviction proceeding?

14            (Discussion is held off the record.)

15            THE DEFENDANT:  I cannot do it.

16            THE COURT:  And you understand that?

17            THE DEFENDANT:  Right.

18            THE COURT:  Has anyone used any force or threat of force

19  to get you to give up your right to appeal your sentence or

20  conviction?  Did anybody make you give up your right to appeal

21  your sentence or conviction?

22            THE DEFENDANT:  No, sir.

23            THE COURT:  Other than the plea agreement, has anybody

24  promised you anything to get you to give up your right to appeal

25  your sentence or conviction?  Has anybody promised you anything to

1  get you to waive your right to appeal your sentence or conviction?

2            THE DEFENDANT:  I don't think so, no.

3            (A discussion is held off the record.)

4            THE DEFENDANT:  No, sir.

5            THE COURT:  And are you giving up your right to appeal

6  freely and voluntarily?

7            THE DEFENDANT:  Yes, sir.

8            THE COURT:  Now, sir, you understand in the federal

9  system, parole has been abolished.  And that if you're sentenced

10 to prison, you will not be released on early parole.  In other

11 words, in the state system they have parole.  In the federal

12 system, there is no parole.  So if you're sentenced to prison, if

13 you receive a prison sentence by the Court, you will not be

14 subject to release on early parole?

15            (A discussion is held off the record.)

16            THE DEFENDANT:  Yes.

17            THE COURT:  You understand you may be sentenced to a

18 term of supervised release, and that if you violate the conditions

19 of release, you can be sent back to prison for the entire term of

20 supervised release?

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  Do you understand if the sentence I impose

23 is more severe than what you expected, you will still be bound by

24 your plea and you will have no right to withdraw it?

25            THE DEFENDANT:  Yes, sir.

1          THE COURT:  Do you understand if I do not accept the

2    sentence and recommendation in your plea agreement, you will still

3    be bound by your plea and you will have no right to withdraw it?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  At this time, I ask Mr. Davis to summarize

6    what the government's evidence would be if this case went to

7    trial.

8          MR. DAVIS:  Yes, sir.

9          Your Honor, if this case went to trial, the government

10   would prove the following:

11         That from approximately 1984 to 2018, the PRAD Group was

12   an architectural design and construction management firm

13   headquartered in Atlanta, Georgia, had performed services for both

14   the City of Atlanta and DeKalb County.  Mr. Jafari served as PRAD

15   Group's executive vice president, and oversaw PRAD Group's

16   finances.

17         From January of 2003 to February of 2017, Adam Smith

18   served as the chief procurement officer for the City of Atlanta.

19   From that position, Mr. Smith supervised the City of Atlanta's

20   purchasing activities and expenditures of billions of dollars of

21   public money.

22         From April 11 -- sorry.  From April 2011 to May of 2016,

23   Joann Macrina served as the City of Atlanta's commissioner of the

24   Department of Watershed Management.

25         Mr. Jafari gave Smith and Macrina cash and other items

of value to obtain business with the City of Atlanta.  In exchange
for those payments, Smith and Macrina conspired with Mr. Jafari to
ensure that the PRAD Group received City of Atlanta business worth
millions of dollars, including conspiring to replace evaluators on
the selection team for the city's architectural and engineering
contract, and to rescore an evaluation so Jafari's company would
be awarded the contract.

            During Smith's tenure as the chief procurement officer,
the City of Atlanta awarded contracts worth millions of dollars to
PRAD Group and joint venturers to which the PRAD Group was a
partner.

            For years Mr. Jafari met with Smith on multiple
occasions, frequently at local restaurants.  During these
meetings, Smith and Jafari discussed City of Atlanta procurement
projects, bids, and solicitations.  Often at the time of these
meetings, Mr. Jafari was actively seeking additional work and/or
assistance with ongoing city projects.  After most of the
meetings, Mr. Jafari paid Smith $1,000 in cash in the bathroom of
the restaurant.

            In return for these bribe payments, Mr. Jafari expected
Smith to use his position and his authority to assist Jafari with
contracting and procurement with the City of Atlanta.

            From at least 2014 to January 2017, Mr. Jafari paid
Smith more than $40,000 in cash with the intent to influence Smith
in his role as the city's chief procurement officer.

1         From at least 2013 through May 2016, Mr. Jafari also met

2    with Ms. Macrina to discuss City of Atlanta projects, procurement,

3    and solicitation.  Often at the times of those meetings, Mr.

4    Jafari was actively seeking contracts, projects, and work with the

5    City of Atlanta.

6         To obtain city work, Mr. Jafari promised Macrina a

7    lucrative job with the PRAD Group, and directly or through a PRAD

8    Group employee gave Ms. Macrina $10,000 in cash, jewelry, a room

9    at a luxury hotel in Dubai, a shopping trip in Dubai, and

10   landscaping work at her home.

11        Shortly after the City of Atlanta fired Ms. Macrina,

12   Ms. Macrina began working for Jafari at the PRAD Group.  Between

13   June and September 2016, Jafari and/or the PRAD Group paid

14   Ms. Macrina $30,000 in four separate payments.

15        Mr. Jafari also committed the overt acts listed in the

16   indictment, including that on January 18, 2017, Mr. Jafari and

17   Smith met at a restaurant on Monroe Drive in Atlanta, Georgia.

18   There Mr. Jafari and Smith had a conversation in a restaurant

19   after which Mr. Jafari gave Smith $1,000 in cash in the restroom.

20        In February of 2017, Mr. Jafari became aware of the

21   federal investigation into his bribe payments of Smith.  In

22   response, Mr. Jafari confronted Smith at City Hall to convince

23   Mr. Smith to lie to the FBI, specifically instructing Smith to

24   deny taking any bribe payments.

25        From 2014 to 2017, the City of Atlanta and DeKalb County

1  governments were local governments, had received federal benefits

2  of more than $10,000.

3          On April 8 and August 21, 2014, the FBI conducted two

4  undercover operations using a confidential source who at the time

5  was a high-ranking DeKalb County public official.  During

6  surreptitiously-recorded meetings, the confidential source met

7  with Jafari at two local restaurants where Jafari sought

8  assistance from the confidential source to obtain work in DeKalb

9  County.  After the meetings, Jafari directed the confidential

10  source to the bathroom where Jafari paid the confidential source

11  between $1,000 and $1,500 in cash.

12          From 2014 to 2016 Mr. Jafari neither filed personal tax

13  returns nor paid any income taxes to the IRS.  During those years,

14  Mr. Jafari withdrew large amounts of cash from corporate bank

15  accounts, and used money from the PRAD Group accounts to pay for

16  various personal expenses including several very high-end luxury

17  vehicles.  To avoid paying taxes, Mr. Jafari committed the

18  affirmative acts listed in the indictment.  For example, in tax

19  year 2016, Mr. Jafari registered assets in nominee names,

20  including a 2018 Bentley Continental and a 2014 Bentley Flying

21  Spur.  In total, Mr. Jafari evaded the payment of at least

22  $1.5 million in taxes.

23          THE COURT:  Thank you, Mr. Davis.

24          Now, Mr. Jafari, you just heard Mr. Davis summarize what

25  the government's evidence would be if this case went to trial.  Do

1  you agree with the prosecutor's summary of what you did?

2          MR. SADOW:  Your Honor, may I be heard on that?

3          THE COURT:  Yes, sir.

4          MR. SADOW:  As to Count 1 we are in agreement that

5  Mr. Jafari conspired with Adam Smith who at that time was the

6  agent for the City of Atlanta.  And that on many occasions, Mr.

7  Jafari corruptly gave Mr. Smith cash at restaurants.  I think that

8  takes care of Count 1.

9          THE COURT:  Any objection to that, Mr. Davis?

10         MR. DAVIS:  No, sir.

11         THE COURT:  All right.  Count 7.

12         MR. SADOW:  As to Count 7, Mr. Jafari agrees that on the

13 two occasions, April and August of 2014, he gave Morris Williams

14 cash in the amounts that -- at least the amount listed in Count 7

15 for the purpose of influencing him who at that time was a City of

16 DeKalb County official in connection with a business transaction.

17         MR. DAVIS:  Yes, sir.  That's fine.

18         THE COURT:  Okay.  Count 13?

19         MR. SADOW:  In Count 13, we are in agreement with the

20 facts as stated by the government.

21         THE COURT:  Now, Mr. Jafari, you just heard your

22 attorney Mr. Sadow go through a list of what you-all are agreeing

23 to enter a plea of guilty to.  Is that your understanding?  Is

24 that what you're pleading guilty to, sir?

25         THE DEFENDANT:  Yes, sir.

1          THE COURT:  And you're pleading guilty as alleged in

2   Counts 1, 7, and 13?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  The Court finds there is a factual basis for

5   the plea of guilty in this case.

6          Now, Mr. Jafari, is there anything I said, any question

7   I asked you that you wish me to repeat or clarify in any manner?

8   Is there anything you want me to repeat?  Any questions you have

9   for me?

10          THE DEFENDANT:  No, sir.

11          THE COURT:  No?

12          THE DEFENDANT:  No.

13          THE COURT:  At this time, I find the defendant

14   understands the charges and the consequences of his plea of

15   guilty.  I observed the defendant during this proceeding, and he

16   does not appear to be under the influence of any substance that

17   might affect his judgement or actions in any matter.

18          The Court finds the offer of the plea of guilty of the

19   defendant of Counts 1, 7, and 13 of the indictment has a factual

20   basis.  It is free of any coercion or influence of any kind.  It

21   is voluntarily made with full knowledge of the charges against him

22   and the consequences of his plea.

23          I further find the defendant is competent to understand

24   these proceedings and to enter a knowingly plea of guilty.  I find

25   there has been no promise of any kind made to him by anyone except

1    as incorporated in the plea agreement set out in open court.

2            It is hereby ordered that the plea of guilty of the

3    defendant to Counts 1, 7, and 13 of the indictment is accepted and

4    entered.

5            Mr. Jafari, you are hereby adjudged guilty of Counts 1,

6    7, and 13.

7            And Ms. Wright will now announce a sentencing date.

8            THE DEPUTY CLERK:  Yes, sir.  The preliminary sentencing

9    date is set for July the 19th at 11 a.m.

10           THE COURT:  The Court, unless there is some reason

11   coming from the Government, will allow Mr. Jafari to remain out on

12   all conditions of bond.

13           MR. DAVIS:  No objection, sir.

14           THE COURT:  Anything else, Mr. Sadow?

15           MR. SADOW:  No, Your Honor.

16           THE COURT:  Mr. Davis?

17           MR. DAVIS:  No, sir.  Thank you.

18           THE COURT:  Thank you-all.  Have a great day and a great

19   rest of the week.

20           (The hearing concluded at 10:00 a.m.)

21

22

23

24

25

C E R T I F I C A T E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA


   I do hereby certify that the foregoing pages are a true and correct transcript of the proceedings taken down by me in the case aforesaid.

   This the 19th day of April, 2023.





                    /s/Viola S. Zborowski _____
                    VIOLA S. ZBOROWSKI,
                    RDR, FAPR, CMR, CRR, RPR, CRC
                    OFFICIAL COURT REPORTER TO
                    THE HONORABLE STEVE C. JONES